GASKINS, J.
|2The defendant, Clydell Cummings, was convicted of possession of cocaine with intent to distribute and was subsequently-adjudicated a fourth felony offender. He was ordered to serve the mandatory sentence of life in prison. The defendant appeals his conviction and sentence. For the following reasons, we affirm the conviction and sentence.
FACTS
On October 7, 2008, law enforcement officials in Shreveport received information from a confidential informant that cocaine was being sold from Room 25 of the Lev-ingston Motel. A search warrant was obtained for that room. At approximately 11:00 p.m., members of the street level interdiction unit, a team composed of Cad-do Sheriffs deputies and Shreveport Police officers, arrived on the scene to execute the warrant. Three officers used a battering ram to knock down the door to the room. One officer noticed a man jumping out the back window of the room. Another officer ran behind the building and found the defendant hiding under it.
|sIn the motel room, officers found a rock of crack cocaine on a plate with a razor blade. In a small purse, officers found 142 rocks of crack cocaine, individually packaged. The total weight of the cocaine found in the room was 25 grams. In a search incident to arrest, officers found more than $1,000 in small bills in the defendant’s front pockets.
The defendant was charged by bill of information with possession of a Schedule II controlled dangerous substance, cocaine, with intent to distribute. The defendant was tried by jury and convicted as charged in a unanimous jury verdict. Motions for a new trial and for a post verdict judgment of acquittal were denied by the trial court on December 18, 2009.
The defendant was charged with being a fourth felony offender. On February 3, 2010, a hearing was held; the defendant was adjudicated a fourth felony offender and sentenced to life imprisonment. The defendant filed a motion to deviate from the mandatory sentence for a fourth felony offender and to reconsider the sentence. The motion was denied by the trial court on February 17, 2010. The defendant appealed his conviction and sentence, arguing that there was insufficient evidence to convict him of possession of cocaine with intent to distribute and that the sentence imposed was excessive.
]4The defendant also filed a pro se brief, reiterating the arguments regarding sufficiency of the evidence and excessiveness of the sentence. In addition, the defendant alleges in his pro se brief that the trial court failed to inform him of the specific allegations of the habitual offender bill of information and that some of the charges used to establish his habitual offender status should not have been used due to the passage of the cleansing period.
SUFFICIENCY OF THE EVIDENCE
The defendant argues that the evidence presented at trial was insufficient to support the jury verdict finding him guilty of possession of cocaine with intent to distribute. This argument is without merit.
Legal Principles
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 *503 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/6/09), 21 So.3d 297.
It is not the function of an appellate court to assess credibility or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913, cert. denied, — U.S. -, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence | fimust be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Holden, 45,038 (La.App.2d Cir.1/27/2010), 30 So.3d 1053, writ denied, 2010-0491 (La.9/24/2010), 45 So.3d 1072.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Holden, supra. The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee fundamental due process of law. State v. Holden, supra.
To convict a defendant of possession of a controlled dangerous substance with intent to distribute, the state must prove beyond a reasonable doubt that he knowingly or intentionally possessed the contraband and that he did so with the intent to distribute it. La. R.S. 40:967; State v. Moore, 40,311 (La.App.2d Cir.1/13/06), 920 So.2d 334, writ denied, 2006-2267 (La.6/1/07), 957 So.2d 167; State v. Franklin, 31,068 (La.App.2d Cir.9/23/98), 719 So.2d 578, writ denied, 1998-2982 (La.3/19/99), 739 So.2d 781.
|7It is not necéssary for the state to prove that the defendant was in actual possession of the contraband; rather, proof of constructive possession is sufficient. Constructive possession is shown when the state proves that the contraband was within the defendant’s dominion and control and that the defendant had knowledge of its presence. State v. Holden, supra.
When the specific intent to distribute a controlled dangerous substance is based on circumstantial evidence, the state must prove the amount of the substance, and/or that the manner in which it was carried was inconsistent with personal use. Intent to distribute illegal drugs may be established by proving circumstances surrounding the defendant’s possession which *504 give rise to reasonable inferences of intent to distribute. State v. Holden, supra.
 Five factors have been identified as useful in determining whether circumstantial'evidence is sufficient to prove intent to distribute a controlled dangerous substance. The factors include: (1) whether the defendant ever distributed or attempted to distribute the controlled dangerous substances; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of the drug creates an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant’s possession is inconsistent with personal use; and (5) whether there was any paraphernalia, |ssuch as baggies or scales, evidencing an intent to distribute. See State v. Clark, 35,272 (La.App.2d Cir.12/5/01), 803 So.2d 280. Testimony of street value and dosage of the drug is also relevant to the issue of intent to distribute. State v. Gladney, 29,791 (La.App.2d Cir.9/24/97), 700 So.2d 575. Mere possession of contraband does not amount to evidence of intent to distribute “unless the quantity is so large that no other inference is possible.” See State v. Greenway, 422 So.2d 1146 (La.1982). La. C.E. art. 701 permits a law enforcement officer to express an opinion regarding matters of personal knowledge gained through experience, even if the witness is not first qualified as an expert. State v. Lowery, 609 So.2d 1125 (La.App. 2d Cir.1992), writs denied, 617 So.2d 905 (La.1993); State v. Holden, supra.
Discussion
At trial, the state offered the testimony of the law enforcement officers who executed the search warrant for Room 25 at the Levingston Motel. John Edward Witham, Jr., a Caddo Parish Sheriffs deputy and the case agent in this matter, testified that the search warrant was executed on the motel room at approximately 11:00 p.m. on October 7, 2008. The warrant was obtained after a confidential informant bought cocaine in the room from a man known as “Cricket.” “Dynamic entry” was made into the 12' x 16' room by three officers with a battering ram.
IflOfficer Shawn Parker of the Shreveport Police Department testified that he and two other officers composed the team that entered the room to execute the search warrant. He said as they approached the room, he heard the dead bolt lock click. . The officers rammed the door to gain entry. According to Officer Parker, no one left the room prior to then entry. Upon entering the room, Officer Parker saw a man jump out a window. No one else was in the room. Officer Parker had a clear view of the man’s face and testified that it was the defendant. Officer Parker testified that Deputy Witham had shown him a picture of the defendant before the officers entered the room and advised them that the man in the photograph was the individual who was supposed to be in Room 25. The defendant was found hiding under the building. Officer Parker noted that in the room, there was a table with a plate containing crack cocaine.
Officer Steve McKenna stated that he aided in executing the search warrant. He testified that he went around to the back of the building when the defendant jumped out of the window. Officer McKenna located the defendant hiding under the building and handed him over to Deputy Witham, the case agent.
Deputy Witham testified that he observed a brown table in the room. On the table was a plate containing a rock of cocaine and a razor blade. linWhen asked, based on his training in narcotics, what *505 was the first thing that came to his mind when he saw the plate with the razor blade and crack cocaine on it, Deputy Witham responded, “That someone had been distributing from that room.”
Deputy Witham observed a black “cigarette-pack-type” purse on , the floor. The purse contained 142 bags of cocaine. Deputy Witham stated that the crack cocaine was individually packaged for sale. The total amount of cocaine found in the room weighed almost one ounce. The defendant was given his Miranda rights. When informed of the amount of cocaine found, the defendant told Deputy Witham that he did not know that he had that amount of cocaine in the room. The defendant offered to give Deputy Witham information. The plate was not processed for fingerprints. Deputy Witham said he did not see the need to do so after the defendant confessed.
Greg Walker, a Shreveport Police Department officer, was present during the execution of the search warrant. He stated that he was working crowd control and that he did not see anyone leave the room before the search warrant was executed. After the defendant was apprehended, he was searched by Officer Walker, who made an inventory of the items taken from the defendant. Officer Walker stated that the defendant had more than $1,000 in cash, divided between his front pants pockets.
| T1 Bruce Stentz, a forensic chemist with the North Louisiana Crime Laboratory in Shreveport, testified as an expert witness. He stated that the substances turned over to the crime lab for analysis in this case were crack cocaine. The amount of cocaine found on the plate in the room was 7.69 grams. The 142 individually bagged rocks of crack cocaine weighed 17.31 grams.
Carl Townley with the Caddo Parish Sheriffs Office testified as an expert witness regarding possession with intent to distribute drugs, packaging and sale of narcotics and distribution of narcotics. Deputy Townley had more than 25 years of law enforcement experience as well as extensive training in narcotics. Deputy Townley reviewed the reports in this ease and specifically noted the packaging and amount of drugs found in this matter, the amount of money recovered from the defendant, and the fact that the bills were in small denominations.[1] He stated that the amount of money and the small denomination of the bills indicated distribution of cocaine. Deputy Townley stated that the amount of drugs found in the room was not consistent with personal use. He said that the amount of cocaine found on the plate would be a lethal dose for two people.
Deputy Townley was asked by the state, “After reviewing all the evidence in this case, the packaging, the cocaine, the materials, the |12photographs and the reports, have you drawn any conclusions as to whether or not this was a simple possession case or whether or not this was possession with intent to distribute?” Deputy Townley replied, “It’s my expert opinion that this was definitely possession with intent to distribute cocaine.” Deputy Townley testified that the amount of cocaine on the plate was sufficient to establish possession with intent to distribute cocaine. According to Deputy ■ Townley, the 142 individually packaged rocks of crack cocaine were “icing on the cocaine cake.”
Sharon Piggs, the bailiff division lieutenant supervisor with the Caddo Sheriffs Office, was called to testify by the defense. She stated that she was familiar with *506 property procedures when individuals are brought into the detention bureau at Cad-do Correctional Center. She testified that when someone is brought in, all of their belongings are placed in the property storeroom. Deputy Piggs was asked to supply the defendant’s wallet at trial. The wallet contained check stubs showing that the defendant was employed and had been paid during the month of September 2008. The wallet also contained a pawn shop receipt showing that the defendant received $560. The defense used this testimony to support a claim that the approximately $1,000 in cash found on the defendant was legitimately obtained.
11sIsabel Smith testified for the defense. She stated that she has had an intimate relationship with the defendant for three or four years. They would meet and go to a motel room. She had planned to meet the defendant on October 7, 2008. She testified that the defendant never told her that he dealt drugs. She was shown pictures of the drugs seized in the room and stated that she had never seen them before.
Fred King, an investigator with the Public Defender’s office, testified that he talked to Joseph Levingston, the owner of the Levingston Motel. Mr. Levingston’s records showed that on October 7, 2008, Room 25 was rented to someone named “Stacey.” The defendant’s name was not on the registration card.
The defendant argues that the evidence in this matter was insufficient to show beyond a reasonable doubt that he possessed the cocaine with intent to distribute. He points out that Room 25 was not rented to him, no clothing or identification belonging to him was found in the room, the plate containing some of the cocaine was not processed for fingerprints, and the individually packaged rocks of crack cocaine were found in what he claimed was a female-type purse. The defendant asserted- that he went to the motel to meet Isabel Smith and that the money he was carrying could be explained by his employment and payments from the pawn shop. In his pro se.brief, the 114defendant asserts that there should have, been field testing to show that he handled the cocaine in this case. He also objects that the state failed to present any “electronic transmitting recordings” relating to the entry of the room and incriminating statement made by the defendant.
The defendant also claims that Deputy Townley improperly expressed an opinion about the guilt or innocence of the accused which is prohibited under La. C.C. art. 704. The defendant in his pro se brief argues that the expert witnesses, Deputy Townley and Mr. Stentz, gave highly biased personal opinions aimed toward the defendant’s guilt.
In his pro se brief, the defendant objects to the state’s action in not calling the confidential informant to testify, claiming that his right of confrontation was violated.
The evidence submitted by the state was sufficient to establish all the elements necessary to support the defendant’s conviction of possession of cocaine with intent to distribute. When officers entered the room to execute a search warrant, there was no one in the small room but the defendant. No one left the room prior to the execution of the warrant. Upon entering the room, one of the officers got a clear look at the defendant and then saw the defendant jump out the back window of the motel room. Flight indicates consciousness of guilt and is a circumstance from which a jury may infer guilt. State v. Smith, 44,998 (La.App.2d Cir.3/31/10), 34 So.3d 386. The defendant was apprehended almost immediately, hiding under the building. When the defen *507 dant was informed of the amount of cocaine found in the, room, the defendant made an incriminating statement, saying that he did not know that he had that much.
All these factors show that the defendant was in constructive possession of a large quantity of crack cocaine. The amount of cocaine, the evidence that the drug was being cut and packaged in the room, the large number of individually packaged rocks of cocaine, and the amount of money in small bills found on the defendant were consistent with selling drugs and establish the intent to distribute. When the officers entered the motel room, the defendant fled by jumping out of a window. Even though the defendant sought to show that his paycheck stubs and payments from the pawn shop would equal approximately the amount of money he was carrying at the time of his arrest, the state argued that, in order for the money to have been legitimately obtained, the defendant would have had to not spend anything at all for more than one month.
The jury was aware of the factors argued by the defendant. The jury’s function was to consider conflicting testimony and make credibility determinations. This court accords great deference to a jury’s decision to | ^accept or reject the testimony of a witness in whole or in part. The jury found that the state proved beyond a reasonable doubt that the defendant committed all elements of the offense of possession of cocaine with intent to distribute. We find that the jury’s verdict is supported by the record.
In connection with his claim of insufficiency of the evidence, the defendant argues that the testimony of Deputy Town-ley, that the circumstances of this case showed possession of cocaine with intent to distribute, constituted an opinion on the guilt or innocence of the accused, which is prohibited by La. C.E. art. 704. That article provides:
Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused. [Emphasis supplied.]
At trial, the defense objected to Deputy Townley being qualified as an expert in the area of possession with intent to distribute narcotics, as well as sales, packaging and distribution. However, no objections were made when Deputy Town-ley testified that the facts of this case showed possession with intent to distribute cocaine. Review of criminal trial errors on appeal has long been governed by the contemporaneous objection rule found in La. C. Cr. P. art. 841. State v. Thomas, 27,507 (La.App.2d Cir.12/6/95), 665 So.2d 629, writ denied, 96-0119 (La.4/8/96), 671 So.2d 338. The contemporaneous objection rule serves two related purposes. The first prevents a defendant from withholding an objection or alternative theory of defense to urge for the first time on appeal in the event of a conviction. In fairness, a defendant cannot simply watch the proceedings unfold and silently hope the trial court will commit error. Nor can a defendant adopt, as a matter of strategy, one approach at trial, and then, if that approach fails, argue a contrary or novel view on appeal. The second purpose is the promotion of judicial efficiency. Due to the fact that the defendant failed to object to the substance of Deputy Townley’s testimony, the defendant did not preserve the issue for appeal.
However, even if the argument were properly before us, we find that no error occurred in this matter. Under La. C.E. art. 704, a trial judge may admit expert testimony which embraces an ulti *508 mate issue to be decided by the trier of fact, but the expert witness is not permitted to testify to the ultimate issue of a defendant’s guilt. State v. Collins, 44,248 (La.App.2d Cir.5/27/09), 12 So.3d 1069.
The state may ask the expert witness whether it is his or her opinion, from the evidence, that the person in possession of the drugs had the intent to distribute. Where the witness never explicitly says that the defendant is|isguilty of possession with intent to distribute, the testimony does not violate La. C.E. art. 704. See State v. Collins, supra, and the cases cited therein. In the present case, the state’s questions and the expert witness’s answers did not violate La. C.E. art. 704.[2]
Also in connection with his argument that the evidence was insufficient to support his .conviction, the defendant argues in his pro se brief that the state’s failure to present the confidential informant in this case deprived .the defendant of his constitutional right to confront and cross-examine a key witness. As a general rule, an iriformant’s identity is privileged information. La. C.E. art. 514. This privilege is founded upon public policy that seeks to further and protect the public interest and law enforcement by encouraging people to supply information to the police by protecting their anonymity. See State v. Mendenhall, 40,986 (La.App.2d Cir.2/7/07), 948 So.2d 1255. The defendant bears the burden of showing exceptional circumstances which would require divulging a confidential informant’s identity, and the trial court has much discretion in deciding whether disclosure is warranted. A showing that the informant participated in the crime constitutes an exceptional circumstance requiring disclosure. State v. Mendenhall, supra.
|igIn this case, the defendant has not carried his burden of establishing the exceptional circumstances necessary to require that the confidential informant’s identity be revealed. The information given by the informant was used only to obtain the search warrant for Room 25. The defendant was charged with possession of cocaine with intent to distribute, no.t with distribution of cocaine. Therefore, the informant did not participate in the crime charged. The defendant’s right of confrontation was not violated in this matter.
Based upon the record in this case, the evidence was sufficient to support the defendant’s conviction for possession of cocaine with intent to distribute. The defendant’s arguments to the contrary are without merit.
EXCESSIVE SENTENCE
The defendant argues that the life sentence imposed in this case, pursuant to his adjudication as a fourth felony offender, is excessive because his prior felonies do not establish that he is violent or dangerous. This argument is without merit.
Legal Principles
The relevant portion of the Habitual Offender Law, under La. R.S. 15:529.1, provides: [3]
| 2qA. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under *509 Title VIII of the Louisiana Children’s Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be 'punished, as follows:
[ (c) ](ii) If the fourth felony and tiuo of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(33), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence. [Emphasis supplied.]
According to La. R.S. 40:967, which concerns prohibited acts and penalties in relation to Schedule II drugs, the penalty for possession with intent to distribute cocaine is imprisonment at hard labor for not less than two years nor more than 30 years. La. R.S. 40:967(B)(4)(b).
_]_2iBecause the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court’s compliance with La. C. Cr. P. art. 894.1 is not required. State v. Thomas, 41,734 (La.App.2d Cir.1/24/07), 948 So.2d 1151, writ denied, 2007-0401 (La.10/12/07), 965 So.2d 396; State v. Gay, 34,371 (La.App.2d Cir.4/4/01), 784 So.2d 714. It would be an exercise in futility for the trial court to discuss the factors, enumerated in that article when the court had no discretion in sentencing the defendant. State v. Sewell, 35,549 (La.App.2d Cir.2/27/02), 811 So.2d 140, writ denied, 2002-1098 (La.3/21/03), 840 So.2d 535.
La. R.S. 15:529.1 mandates a life sentence without benefits for a defendant who is a fourth felony offender when two of the prior felony convictions and the fourth felony conviction are for certain violations of the Uniform Controlled Dangerous Substance Law. The mandatory life sentence the habitual offender law requires is presumptively constitutional and should be accorded great deference by the judiciary. See State v. Johnson, 1997-1906 (La.3/4/98), 709 So.2d 672.
In State v. Dorthey, 623 So.2d 1276 (La.1993), the Louisiana Supreme Court recognized that if a trial judge determines that the punishment mandated by the Habitual Offender Law makes no measurable contribution to acceptable goals of punishment, or that the sentence amounts |22⅛0 nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime, he is duty bound to reduce the sentence to one that would not be constitutionally excessive.
In State v. Johnson, supra, the Louisiana Supreme Court further qualified the Dorthey holding permitting a downward departure from a mandatory minimum sentence in the context of the Habitual Offender Law. Specifically, the court held that, to rebut the presumption that the mandatory minimum sentence was consti *510 tutional, the defendant had to “clearly and convincingly” show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Johnson, supra.
A trial judge may not rely solely upon the nonviolent nature of a crime before the court or of past crimes as evidence that justifies rebutting the presumption of constitutionality. State v. Johnson, supra.
Discussion
The record reveals that defense counsel filed a “motion to deviate from the constitutionally excessive fourth habitual offender statute and reconsider sentence” on February 8, 2010. The motion was denied. As was | purged in the motion to deviate from excessive sentence, defense counsel contends on appeal that the defendant’s actions were not violent or dangerous.
The present case clearly falls within the circumstances enumerated in La. R.S. 15:529.1, which mandate a sentence of life imprisonment for a fourth felony offender. The record shows that the defendant pled guilty on August 16, 1991, to possession of a Schedule II controlled dangerous substance, cocaine, and was given a five-year sentence which was suspended. The defendant was placed on four years’ supervised probation and fined $750. On March 22, 1993, the defendant’s probation was revoked and the defendant was ordered to serve the five-year sentence, with credit for time served.
On March 5, 1993, the defendant pled guilty to aggravated battery and possession of a Schedule II controlled dangerous substance, cocaine, with intent to distribute. The defendant was sentenced to serve eight years on each count, with the sentences to run concurrently.
On February 9, 2006, the defendant pled guilty to another charge of possession of a Schedule II controlled dangerous substance, cocaine, with intent to distribute. The defendant was sentenced to three years at hard labor |?/with two years to be served without benefit of probation, parole, or suspension of sentence.
The defendant’s current conviction for possession of cocaine with intent to distribute is a violation of the Uniform Controlled Dangerous Substances Law and is punishable by imprisonment for 10 years or more. Furthermore, two of his prior felonies are violations of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for 10 years or more, namely two prior felonies for possession with intent to distribute cocaine. Because the mandatory life sentence is presumptively constitutional, and therefore not excessive, the defendant is obligated to “clearly and convincingly” show that, because of unusual circumstances, he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. The jurisprudence holds that he cannot do so by solely relying upon the nonviolent nature of a crime before the court or of past crimes.[4] The defendant *511 has failed to satisfy the heavy burden of proving that he is “exceptional,” such that a downward departure from the mandatory sentence would be justified. The trial court did not err in the sentence imposed.[5]
PRIOR HABITUAL OFFENDER CONVICTIONS
12sThe defendant argues in his pro se brief that the trial court erred in adjudicating him a fourth felony offender because his 1991 conviction and the 1993 conviction were committed when La. R.S. 15:529.1 provided that the statute was not applicable where more than five years have elapsed since the expiration of the maximum sentence, or sentences, of the previous conviction, or convictions, and the time of the commission of the last felony for which he has been convicted. He argues that the “cleansing” period of five years operated to prohibit the use of the 1991 and 1993 convictions to adjudicate him a fourth felony offender in this case.[6] This argument is without merit.
Discussion
In State v. Everett, 2000-2998 (La.5/14/02), 816 So.2d 1272, the Louisiana Supreme Court was called upon to determine whether La. R.S. 15:529.1, as amended in 1995, permits a defendant to be adjudicated a third felony offender when he could not have been adjudicated a second felony offender under the version of La. R.S. 15:529.1(0 in effect at the time of the commission of the second felony offense. In Everett, the defendant was convicted in 1984 of being a convicted felon in possession of a firearm and sentenced to serve three years at hard labor. In 1993, the defendant was convicted of another felony, theft of property valued between $100 and 1 gñ$5QQ, and was' placed on 18 months’ probation. At that time, the defendant could not have been adjudicated a second felony offender because La. R.S. 15:529.1 provided that the habitual offender statute was not applicable where more than five years had elapsed between the expiration of the maximum sentence of the previous conviction and the commission of the last felony of conviction. In 1994, La. R.S. 15:529.1(0 was amended to increase the time period to seven years. In 1995, the statute was again amended to increase the time period to 10 years. In Everett, the defendant committed aggravated battery in 1998, was convicted in 1999 and then was charged as a third felony offender.' He argued that, because he could not have been adjudicated a second felony offender at the time he committed the second felony offense, he could not now be adjudicated a third felony offender.
The Louisiana Supreme Court disagreed. The purpose of the Habitual Offender Law is to deter and punish recidivism. State v. Everett, supra. In discussing La. R.S. 15:529.1, the court in State v. Everett, supra, provided:
To this end, subsection (A) of the statute sets out enhanced penalties to be imposed on persons who have been convicted of a felony and thereafter commit subsequent felonies. The statute pro *512 vides the penalties after identifying the number of felonies committed by stating, for example, “If the second felony is such that ...and “If the third felony is such that....”
Subsection (C), however, provides that “[t]his Section,” i.e., the Habitual Offender Law, “shall not be applicable in cases where more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous conviction or convictions ... and the time of the commission of the last felony for which he has been convicted.” We interpret this subsection to mean that in order to determine whether the Habitual Offender Law applies at all to enhance a defendant’s sentence after conviction of a subsequent felony, we must look to that time period between defendant’s discharge from being subject to penitentiary confinement for the previous conviction and the commission of the underlying felony. If that time period encompasses more than ten years, then the Habitual Offender Law is inapplicable to defendant’s case and he cannot be sentenced as anything other than a first offender. If, on the other hand, ten years or less have elapsed between the defendant’s discharge from being subject to penitentiary confinement for the previous conviction and the commission of the underlying felony, then the Habitual Offender Law is applicable and subsection (A) is employed to determine the appropriate sentence. Under subsection (A), defendant’s felony convictions are simply counted, either second, third, or fourth or subsequent, and the applicable penalty is imposed. As defendant himself correctly recognizes, subsection (C) is concerned only with that period of time between the expiration of the sentence for the last previous felony conviction and the commission of the last felony. It is only that time period which the legislature has made relevant to determine whether defendant will be sentenced under the Habitual Offender Law. [Footnote omitted.]
The Everett court found that the application of the 1995 amendment to La. R.S. 15:529.1 did not violate the prohibition against ex post facto laws and was not fundamentally unfair. The court noted that the 1995 amendment 1 ^did not redefine criminal conduct or increase the punishment after the defendant committed the underlying offense. The enhanced sentence for a habitual offender convicted of a new felony punishes the second or subsequent offense, not the first. A defendant therefore acquires no “vested right” in any offender status once the legislatively-defined period of inapplicability is triggered and the legislature may change the defendant’s status based on his prior record at any time before commission of the underlying offense. State v. Everett, supra. The Louisiana Supreme Court in Everett found that the defendant could properly be adjudicated a third felony offender.
In the present case, the defendant was convicted of his third felony in 2006. He committed the present offense in 2008. Because 10 years had not passed between these two offenses or between any of the other felony convictions, under the provisions of La. R.S. 15:529.1, the defendant was properly adjudicated a fourth felony offender.
CONCLUSION
For the reasons stated above, we affirm the conviction and sentence of the defendant, Clydell Cummings.
AFFIRMED.

. There were 37 twenty-dollar bills, 12 ten-dollar bills, 24 five-dollar bills, 34 one-dollar bills, and 1 fifty-dollar bill found on the defendant's person.

. Regarding the defendant’s pro se argument, Mr. Stentz from the crime lab testified to identify the substances recovered in this case as cocaine. He made no statement whatever regarding the defendant's guilt or innocence.

. The version of the statute in effect at the time of the defendant’s adjudication as a habitual offender is set forth here. The statute was amended in 2010. None of the amendments are relevant to this case and would not make a difference in the sentence.

. Only one of the two convictions entered on March 5, 1992, can be considered in determining the defendant's habitual offender status. Either of the convictions from March 5, 1993, would suffice in rendering the defendant a fourth felony offender. Further, the defendant has a prior felony conviction for aggravated battery which is a crime of violence under La. R.S. 14:2(B).

. The defendant argues in his pro se brief that the trial court failed to inform him of the specific allegations in the habitual offender bill of information before he stipulated to the allegations against him. The record shows that the defendant neither stipulated to the allegations in the habitual offender bill of information nor entered a guilty plea. A full hearing was held on the habitual offender charge. The state proved all allegations in the habitual offender bill of information. The defendant's argument is without merit.

. The Louisiana Supreme Court in State v. Everett, infra, points out that La. R.S. 15:529.1 does not refer to a "cleansing” period and encourages courts to refrain from the use of the phrase.