CARAWAY, J.
12Matthew Stephens was convicted in a bench trial of possession with intent to distribute methamphetamine (Schedule II CDS), in violation of La. R.S. 49:967(A)(1), and possession of Lortab (Schedule III CDS), in violation of La. R.S. 40:968(C). He pled guilty to being a fifth felony habitual offender and was sentenced on each count to concurrent sentences of 50 years at hard labor without benefit of probation or suspension of sentence.[1] Stephens appeals his conviction and sentence. We affirm his conviction and sentences, but vacate a sentence imposed in error for possession of a Schedule IV CDS.

Facts

On June 4, 2008, Matthew Stephens was charged by bill of information with possession with intent to distribute a Schedule II CDS, methamphetamine, and possession of a Schedule III CDS, Lortab. The same bill of information also charged Jade Cofer with possession of a Schedule IV CDS.
On August 27, 2010, Stephens was tried before a judge. The following facts were gleaned from the trial testimony.
Agent Robert Robinson, a Shreveport Police Department mid level narcotics investigator, testified that he had been investigating both Stephens and Cofer for illegal distribution of narcotics. Through the course of his investigation, he received information that Stephens would be bringing to DCofer’s home a large amount of methamphetamine concealed in two black bags. Robinson obtained a warrant to search Cofer’s home on April 15, 2008. Once Stephens arrived at Cofer’s house, other officers executed the warrant through the front door of the residence. Robinson stated that officers apprehended Stephens as he tried to escape through the back door. Three other individuals found inside of the home included Cofer, Laurie Ezernack and Charles Todd.
As officers conducted their search they found a purse containing Xanax pills, cash, and methamphetamine according to Robinson. Cofer admitted that these items belonged to her. The officers also located a black nylon bag on the sofa in the living room. Inside of the black bag was another bag. Robinson testified that methamphetamine, cocaine and Lortab were found inside the bags in addition to unused baggies and needles, clean syringes, spoons, swabs and “gadgets” that “people with metham- *1267 phetamines like to deal with.” Robinson testified that Stephens was known as the “Gadget Man.” Robinson stated that the black bag and its contents matched what he expected Stephens to bring to Cofer’s home based upon information he had received. Robinson arrested Stephens and informed him of his rights.
Robinson testified that he took Stephens to the police station, read him his rights a second time and obtained his video-recorded statement in which Stephens admitted that the bag belonged to him. However, Stephens denied that the drugs found inside the bag were his. Stephens told Robinson that he was a narcotics dealer and had “some stuff’ in the bags earlier, 1 including Ecstasy and Ice, street terms for methamphetamine, that he dropped off prior to coming to the house because he knew Cofer’s house was “hot.” Stephens indicated to Robinson that he sold drugs to support his own habit. He admitted that he and Cofer had a “relationship” and that they sold dope together. Stephens admitted that when he got to Cofer’s house, he bought $400 worth of narcotics from her that he handed to Ezernack when the raid occurred.
Robinson testified that the quantity of methamphetamine found in Stephens’ bag was probably not intended for personal consumption. He explained that a user could not typically keep more than two grams of methamphetamine in his possession because its addictive nature created a potential threat of overdosing.
On cross-examination, Robinson revealed that he had information from a confidential informant that Stephens would be arriving at the house with “a large amount of methamphetamines.” The officers did not report seeing Stephens’ entry into the house. All of the individuals in the residence, however, including Charles Todd, informed Robinson that Stephens had brought the black bag into Cofer’s home. Robinson testified that the officers did not find any other black bags in the home. Robinson admitted that Stephens had no drugs on his person when he was arrested. He also admitted that Todd was on parole for distribution of methamphetamine and had his own bedroom in Cofer’s house.
Next to testify was Corporal Sean McCullough of the Caddo Parish Sheriffs Office. McCullough first made entry into the home through the | ¡¡front door. McCullough acted upon information he had that Cofer and Stephens were inside the home. During the operations, McCullough stayed in the living room and ultimately began the search of the room. On the sofa, he located a “fanny sized black bag” and opened it. He found another black case in the outer bag. He proceeded to look through the bags, where he found narcotics. McCullough photographed the items he found. At trial he identified the photographs which were introduced into evidence.
McCullough identified the larger black bag that he recovered on the couch. He testified that it was inside this bag that he found a smaller “Game Boy bag.” He testified that it was during his search of the main bag that he found narcotics including methamphetamine, cocaine and a couple of pills. McCullough opened the larger bag while testifying and removed the contents of it. He described a blue glass case and smaller zipper bag which contained a spoon, plastic container, and a large empty baggie which usually contained smaller baggies. He also identified a gold container in which he found “several different things of narcotics.” McCullough testified he found several empty bags that he knew were used to package narcotics.
He stated that it was when he opened the smaller bag that he discovered more *1268 narcotics. He also opened that bag in court and testified that he found methamphetamine in it along with baggies for packaging and other items of paraphernalia. He removed the items from this bag in court. He identified the items as a “medium-sized bag” containing approximately 20-25 smaller unused baggies with hearts on them that were used to package |finarcotics. McCullough testified that he also found a hideaway key, plastic container with razor blades in it, a magnet, a small metal cup, a spoon and numerous other clear baggies that were used for packaging narcotics. He also testified that he found unused syringes, a knife, and a larger quantity of narcotics in the smaller black bag.
McCullough also identified the narcotics he found in the two bags and stated that one large bag of methamphetamine weighed about 19.5 grams and that a total of 22 grams of methamphetamine was recovered from the bags.
Lieutenant Mike Tong of the Shreveport Police Department was qualified by the court as an expert in street-level narcotics investigation and long-range investigation. He testified that although he was not personally involved in the investigation of this case, he had reviewed the photographs and evidence including the narcotics seized. In making a determination as to whether an individual is a dealer or not, Tong testified that he looks for scales, packaging materials, currency and the weight of the material seized. He may also consider how the drugs are packaged. Tong stated that large quantities- of methamphetamine packaged in a large baggie with needles, spoons or smoking pipes would indicate that the person is a dealer as well as a user.
Tong considered the 19.5 grams found in one bag in this case and testified that a person in possession of 19.5 grams of methamphetamine would be charged with possession with intent to distribute. According to Tong, such an amount of narcotics is “too large of a quantity for personal 17use” and “would be indicative of somebody who is going to cut it down and sell it.” The fact that there are additional individual prepackaged baggies bolstered his conclusion that the individual was prepared for distribution. Tong testified that dealers will also sell needles with their product as well as other paraphernalia. Tong concluded that the large amount of methamphetamine and various paraphernalia found in the black bag belonged to a person “in the business of distributing narcotics.”
Bruce Stentz, a forensic chemist at the North Louisiana Crime Lab in Shreveport, was qualified as an expert in forensic chemistry and narcotics analysis. Stentz testified that various lab tests were performed on the contents found in both black bags. These tests revealed that both bags contained methamphetamine, a Schedule II controlled dangerous substance. The blue pill recovered tested positive for hy-drocodone and a nonnarcotic ingredient, a Schedule III controlled dangerous substance.
As its last witness, the state recalled Agent Robinson to testify. He first indicated that he was informed that the crime lab was not able to find any detectable DNA or fingerprints on the bags. Robinson also stated that he had maintained a continuing, ongoing investigation of Stephens after his arrest where he monitored Stephens’ telephone conversations made from Caddo Correctional Center. On June 6, 2009, Robinson recorded a conversation between Stephens and his sister. The state introduced into evidence both the recording and a transcript of the call. During the conversation, Stephens and his sister discussed the fact that the state *1269 obtained DNA evidence from him. Stephens’ sister asked him why he ^thought they were testing and Stephens responded that he thought its was for a “syringe or something.” Stephens told his sister:
If there was some [syringes] in the bag, I don’t even know if there were any dirty in there, there might have been though you know.
* * *
I don’t care about that though, that just makes me look more like a drug head.
[[Image here]]
The dope was in a little bitty bag, you couldn’t fit a syringe in the bag, that the dope was in, it was a little bitty zip hand bag you know.
[[Image here]]
Those [syringes] were in another big black like another like a satchel black bag thing.
On cross-examination, Robinson admitted that the conversation took place one year after initial discovery in the case. Robinson testified, however, that he never told Stephens “exactly how it [the narcotics] was packaged or any details. I just told him the amount, you know, the weight. We didn’t go into where it was zipped in this or needles or syringes.” However, he admitted that his report contained the information.
When trial reconvened on September 9, 2010, the district court found Stephens “guilty on the charges brought against him.”
On January 19, 2012, Stephens entered a guilty plea as a fifth felony offender[2] based upon prior offenses of possession of an unregistered firearm, escape and jumping bail, distribution of Schedule I narcotics, and possession of methamphetamine. On March 5, 2012, the court vacated Stephens’ previously imposed sentences and imposed three concurrent 1 sentences of 50 years hard labor without benefit of probation or suspension of sentence.
Stephens’ motion to reconsider sentence was denied by the trial court and this appeal followed.

Discussion

Stephens argues that the evidence failed to prove beyond a reasonable doubt that he was in actual or constructive possession of either methamphetamine or Lortab. Stephens argues that the state failed to disprove the possibilities that he brought a separate black bag into the home or that another individual placed the drugs in his black bag as they saw police approach the home. Stephens also argues that little weight should have been given to his recorded telephone conversation as proof that he knew the drugs were in his bag because the conversation took place 14 months after his arrest and after he would have learned during discovery what items were seized in his bag. Lastly, Stephens contends that the evidence failed to prove intent to distribute.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 448 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 08-0499 (La.11/14/08), 996 So.2d *1270 1086. This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 09-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 09-0372 (La.11/6/09), 21 So.3d 299.
Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred 11 according to reason and common experience. State v. Speed, supra. A conviction based upon circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). The trier of fact is charged to make a 'credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Sosa, 05-0213 (La.1/19/06), 921 So.2d 94.
To support a conviction for possession with intent to distribute, the state must prove: (1) possession of the controlled dangerous substance; and (2) intent to distribute it. La. R.S. 40:967(A)(1); State v. Gladney, 29,791 (La.App.2d Cir.9/24/97), 700 So.2d 575; State v. Lee, 25,917 (La.App.2d Cir.5/4/94), 637 So.2d 656, writ denied, 94-1451 (La.10/7/94), 644 So.2d 631. Likewise, it is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule III unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner. La. R.S. 40:968(C).
1 igOne need not actually possess the controlled dangerous substance; constructive possession is sufficient to convict. State v. Gladney, supra. Constructive possession means having an object subject to one’s dominion and control, with knowledge of its presence, even though it is not in one’s physical possession. State v. Gladney, supra; State v. Perez, 569 So.2d 609 (La.App. 2d Cir.1990), writ denied, 575 So.2d 365 (La.1991).
*1271 Five factors have been identified as useful in determining whether circumstantial evidence is sufficient to prove intent to distribute a controlled dangerous substance. The factors include: (1) whether the defendant ever distributed or attempted to distribute the controlled dangerous substances; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of the drug creates an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant’s possession is inconsistent with personal use; and (5) whether there were any paraphernalia, such as baggies or scales, evidencing an intent to distribute. State v. Cummings, 46,038 (La.App.2d Cir.1/26/11), 57 So.3d 499, writ denied, 11-0341 (La.6/17/11), 63 So.3d 1037; State v. Clark, 35,272 (La.App.2d Cir.12/5/01), 803 So.2d 280. Testimony of street value and dosage of the drug is also relevant to the issue of intent to distribute. State v. Gladney, supra. Mere possession of contraband does not amount to evidence of intent to distribute “unless the quantity is so large that no other inference is possible.” See State v. Greenway, 422 So.2d 1146 (La.1982).
118Flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience. State v. Garner, 45,474 (La.App.2d Cir.8/18/10), 47 So.3d 584, writ not considered, 12-0062 (La.4/20/12), 85 So.3d 1256; State v. Durden, 36,842 (La.App.2d Cir.4/9/03), 842 So.2d 1244, writ denied, 03-1350 (La.11/26/03), 860 So.2d 1131.
After viewing the evidence in a light most favorable to the prosecution, we find the evidence sufficient to convict Stephens of both possession with intent to distribute a Schedule II CDS, methamphetamine, as well as possession of a Schedule III CDS, Lortab.
Stephens readily admitted that he owned the black bag seized by the officers in Cofer’s residence. The officers testified that no other black bags were found in the home. All other occupants of the house also indicated that it was Stephens who carried the bag into the house. Thus, the evidence establishes Stephens’ ownership of the bag found by officers. The issue of whether he brought drugs into the home in those bags was not established by direct evidence. Nevertheless, Stephens’ claim to lack knowledge of the drugs in the bags was obviously rejected by the trial court based upon the circumstantial evidence presented by the state. Certainly, considering that police acted quickly to execute the search warrant soon after Stephens’ entrance into the home, the trial court could have reasonably rejected as unreasonable any argument by Stephens that enough time had elapsed for someone else to transfer the drugs to the bags. Stephens’ admission that he was a drug dealer and had sold the methamphetamine and Ecstasy which were in the bag “before he came over there” refutes his claimed ignorance [uof the contents of the bag. Stephens’ attempted flight from the home was additional evidence from which the trial court could infer guilt. Finally, Stephens’ phone admissions to his sister were detailed enough to suggest his intimate knowledge of what was contained in the bags. Considering these collateral facts and circumstances proven by the state, we find that the circumstantial evidence of Stephens’ actual possession and knowledge of the drugs, including methamphetamine and Lortab, was established beyond a reasonable doubt.[3] Further we find that the evidence of Stephens’ admitted drug deal *1272 ing along with the amount and packaging of the methamphetamine found in the black bags which expert testimony established were consistent with distribution, to be sufficient proof that Stephens possessed the methamphetamine with the intent to distribute it. Accordingly, we find no merit to Stephens’ arguments.
Stephens also contends that the imposed sentences are constitutionally excessive given the circumstances of the case and his background which shows that he is not the most egregious violator. Stephens argues that he should not have been sentenced to an additional year of imprisonment on top of the 20- and 30-year minimum sentences because the imposed sentences are the “functional equivalent of life sentences.” He claims that he is not a large-scale dealer, but only deals to support his own drug addition. Finally, Stephens argues that the trial court erroneously imposed a 50-year sentence on Count 3 of the bill of information, a crime for which he was neither tried nor convicted.
hfiAn appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 07-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267, writ denied, 08-2697 (La.9/18/09), 17 So.3d 388. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 08-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 07-0144 (La.9/28/07), 964 So.2d 351.
11fiSecond, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379.
A trial court has wide discretion to sentence within the statutory limits. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of discretion, a sentence will not be set aside as excessive. Id.
For the underlying crime of possession of methamphetamine with intent to distrib *1273 ute, Stephens faced possible maximum sentencing exposure of 30 years. La. R.S. 40:967(A)(1). For the underlying offense of possession of a Schedule III CDS, Stephens faced maximum sentencing exposure of five years. La. R.S. 40:968(C). Because of his habitual offender adjudication, however, Stephens was sentenced under the following provisions of La. R.S. 15:529.1A:
(4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
(a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a | ^determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life.
Thus, Stephens faced sentencing exposure of 20 years to life on the possession conviction and 30 years to life on the possession with intent to distribute conviction.
Prior to imposing the sentences, the court heard the testimony of Stephens’ father who requested that the court not sentence Stephens to any more than the minimum sentence of 30 years because he was only a drug addict.
Thereafter, the court noted its consideration of a presentence investigation report which included Stephens’ criminal record which began with a 1995 federal conviction for illegal carrying of a weapon for which he received a sentence of 37 months. The court next considered that Stephens was convicted of two counts of distribution of marijuana in 1995 and received concurrent 10-year sentences. The court noted undated fugitive charges and a misdemeanor DWI. The court observed that in 2005 Stephens was charged with distribution of a Schedule II drug and entered a guilty plea to possession of a Schedule II drug. He received a two year sentence. In 2007 and 2008 Stephens’ parole was revoked. In 2009 Stephens pled guilty to federal charges of unlawful transportation of firearms.
After considering these facts, the court accepted that Stephens was a fifth felony offender and informed the defendant of the sentencing range he faced. The court expressed concern that Stephens’ parole had been revoked on two occasions and that he had both weapons and drug charge | ^convictions, with drug offenses involving distribution, possession with intent to distribute and possession. The court determined that Stephens was in need of correctional treatment and that lesser sentences would deprecate the seriousness of the crimes. The court considered that Stephens was persistently involved in similar drug and gun offenses and that he had been consistently committing felonies since 1995, a considerable period of time.
The court also noted that Stephens was a relatively youthful offender at 36 and that his father was. in bad health. After weighing all of these factors, the court imposed concurrent 50-year sentences on each count.
We cannot find that the imposition of these sentences was constitutionally excessive. The court adequately considered the sentencing guidelines including aggravating and mitigating factors. Moreover, Stephens’ criminal history included multiple drug and weapon charges and parole revocations which have spanned a period of more than 15 years. His continued drug activity shows that he has failed to benefit from prior leniency in sentencing and has not been rehabilitated by prior incarceration. Additionally, Stephens’ guilty plea to the habitual offender pro *1274 ceeding reduced his sentencing exposure. Thus, he benefitted substantially from the plea agreement. In these circumstances, we cannot say that these midrange sentences shock the sense of justice or qualify as a needless and purposeless imposition of pain and suffering. Therefore, we affirm the sentences imposed for the crimes of conviction.
We find merit to Stephens’ argument that the sentence imposed upon him for the crime of possession of a Schedule IV CDS is in error and must |19be vacated. The district court improperly sentenced Stephens to serve 50 years for a crime that was billed against Cofer. The imposed sentence is hereby vacated.

Conclusion

For the foregoing reasons, Stephens’ convictions and sentences for possession with intent to distribute a Schedule II CDS and possession of a Schedule III CDS are affirmed. The sentence imposed for possession of a Schedule IV CDS is vacated.
CONVICTIONS AND SENTENCES AFFIRMED; SENTENCE VACATED.

. Additionally, the district court sentenced him to serve 50 years at hard labor without benefits for possession of a Schedule IV CDS.

. Prior to the July 20, 2011 sentencing hearing, the state filed a sixth felony habitual offender bill of information which was reduced by a plea agreement.

. This determination precludes any discussion of the issue of constructive possession.