950 So.2d 135 (2007)
STATE of Louisiana, Applicant
v.
Verna J. WALLACE, Respondent
State of Louisiana, Applicant
v.
Kevin D. Waller, Respondent.
Nos. 41,837-KW, 41,838-KW.
Court of Appeal of Louisiana, Second Circuit.
January 31, 2007.
*136 Minifield & Harper, by L. Charles Minifield, for Verna J. Wallace, Kevin D. Waller.
Walter E. May, Jr., District Attorney, James Richard Hatch, Assistant District Attorney, for State of Louisiana.
Before BROWN, STEWART, and MOORE, JJ.

ON REHEARING
BROWN, C.J.
Claiborne Parish Deputy Paul Brazzel stopped Kevin Waller ("Waller") to issue a ticket for a routine traffic violation, but Waller told the officer that his name was "Dante Malone." When Deputy Brazzel learned Waller's true identity, the officer obtained a warrant for Waller's arrest. Accompanying Deputy Brazzel to execute this arrest warrant were Haynesville Police Chief Anthony Smith, Lieutenant Jimmy Brown, and Sergeant John Barnette. Waller and Verna Wallace ("Wallace") lived together at the residence on Roland Street. Deputy Brazzel knocked on the front door and asked Ms. Wallace if Waller was there, and she told him that Waller was not there. In the meantime, Chief Smith went around to the back and found Waller and Jeremy Smith coming out of *137 the back door of the residence. Chief Smith brought Waller around to the front of the residence, at which time Deputy Brazzel placed Waller under arrest and put him in the back of the patrol car.
Chief Smith and Lieutenant Brown then went to the front door. Chief Smith testified that when Ms. Wallace opened the door, he could smell the odor of marijuana smoke and saw other people inside. Chief Smith testified that he then asked permission to come inside the residence and that Ms. Wallace gave him permission. Chief Smith testified that once inside, he then saw marijuana and cocaine residue in plain sight on a cabinet. Chief Smith then arrested Ms. Wallace for possession of marijuana, possession of cocaine, and resisting arrest due to her lying about Waller's whereabouts when asked by Deputy Brazzel.
The trial court granted defendants' motion to suppress, finding that the state did not meet its burden of proving that there was consent for the search. This court granted the state's writ and reversed on the basis that the search was incidental to a lawful arrest and conducted with probable cause and under exigent circumstances. On rehearing, the defendants argue that the original order suppressing the contraband should be reinstated for the following reasons: (1) the officers had no right to go on the premises to arrest Kevin Waller; (2) Verna Wallace did not actually commit a crime, but even if she had, Chief Smith had no knowledge of the crime; and, (3) Chief Smith had no consent, probable cause, or exigent circumstances to justify his entry into the residence. The application for rehearing is denied for the reasons below.
In support of the argument that the presence of law enforcement officers on the premises to arrest Kevin Waller was illegal for lack of a search warrant, defendants cite Steagald v. U.S., 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), wherein the United States Supreme Court held that law enforcement officers must obtain a search warrant in addition to an arrest warrant when searching for the subject of the arrest warrant in the home of a third party, absent the presence of exigent circumstances or consent. The absence of a search warrant before executing the arrest warrant on Waller is immaterial because Ms. Wallace testified that she and Waller were living together at the residence at the time of the arrest. An arrest warrant, founded on probable cause, gives law enforcement officers "the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); see also State v. Barrett, 408 So.2d 903 (La.1981). Therefore, the absence of a search warrant did not render the officers' presence on the premises illegal because Kevin Waller lived at that residence, and the existence of the arrest warrant was sufficient to justify the officers' presence.
Defendants next argue that whether or not Verna Wallace committed the offense of resisting arrest, there was no justification for Chief Smith to enter her home without a warrant. In pertinent part, La. C. Cr. P. art. 213(3) provides that a peace officer may, without a warrant, arrest a person when the peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer. The statute does not require the arresting officer to have actually witnessed the offense. Further, probable cause, and not absolute certainty, is the test to be applied in judging the validity of an arrest, and all possible lawful explanations of a situation need not by negated before making an *138 arrest. State v. Ceaser, 02-3021 (La.10/21/03), 859 So.2d 639; State v. Winfrey, 359 So.2d 73 (La.1978); State v. Phillips, 347 So.2d 206 (La.1977).
Rather, under article 213, probable cause for a warrantless arrest exists when the facts and circumstances known to the officer and of which he has reasonable and trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Arceneaux, 425 So.2d 740 (La.1983), State v. Davis, 359 So.2d 986 (La.1978); State v. Cantanese, 493 So.2d 725 (La.App. 2d Cir.1986). Therefore, it is immaterial if Chief Smith actually witnessed Verna Wallace commit the act of resisting arrest because Officer Brazzel provided reasonable and trustworthy proof to justify such a belief. Chief Smith had the authority under La. C. Cr. P. art. 213 to arrest Verna Wallace.
Even so, a warrantless arrest pursuant to La. C. Cr. P. art. 213 may not be made inside the home of the suspect unless there is consent or exigent circumstances. State v. Cantanese, supra (citations omitted). The trial court found that there was no consent given to enter the residence, and this court previously concluded that the trial court did not abuse its discretion in making that finding.
Chief Smith did, however, have probable cause coupled with exigent circumstances to justify the search. He lawfully approached the front door of the house, detected the odor of marijuana emanating from inside the residence and saw that there were people inside the residence who could hide or destroy the suspected contraband. To avoid this result, defendants argue that Chief Smith had no authority to come to the front door. This court, however, has previously found that law enforcement officers have the same right as the general public to approach the entrance of a home:
The curtilage of a home, that "area to which extends the intimate activity associated with the sanctity of a man's home and privacies of life," is considered part of the home itself and is therefore afforded Fourth Amendment protection. State v. Brisban, 00-3437 (La.02/26/02), 809 So.2d 923. The front porch of a private residence falls within the curtilage of the home and is therefore accorded Fourth Amendment protection. Id. However, because of "an almost implicit understanding and custom in this country that, in the absence of signs or warning, a residence may be approached and occupants summoned to the door by knocking," the front porch does not enjoy the same measure of Fourth Amendment protection as the home. Id. The police have the same right as other members of the public to approach the doorway of a home and see what was exposed by the owner to the view of the general populace. State v. Deary, 99-0627 (La.01/28/00), 753 So.2d 200.
State v. Stephens, 40,343 (La.App. 2d Cir.12/14/05), 917 So.2d 667, 674, writ denied, 06-0441 (La.09/22/06), 937 So.2d 376. Therefore, regardless of whether Chief Smith had the authority to arrest Verna Wallace under La. C. Cr. P. art. 213, he had every right to approach the front door of the residence.
In State v. Traylor, 31,378 (La.App. 2d Cir.12/09/98), 723 So.2d 497, this court found that the odor of marijuana emanating from a vehicle gave the officer probable cause to suspect that the defendant was smoking, and thus possessing, marijuana. As this court noted in State v. Thompson, 543 So.2d 1077, 1080 (La.App. 2d Cir.1989), citing State v. Garcia, 519 So.2d 788, 793 (La.App. 1st Cir.1987), "`there is no reasonable expectation of *139 privacy from lawfully positioned officers with inquisitive nostrils.'" See also State v. Risin, 02-0100 (La.App. 4th Cir.01/22/02), 807 So.2d 1042; State v. Gordon, 93-1923 (La.App. 1st Cir.11/10/94), 646 So.2d 1005; State v. Gordon, 93-1922 (La.App. 1st Cir.11/19/94), 646 So.2d 995. Because Chief Smith had the same right as any other citizen to approach the front door of the residence, he was in a lawful position at the time he detected the odor of marijuana emanating from inside the residence when Verna Wallace opened the door. This gave Chief Smith probable cause to believe that there was marijuana inside the residence.
Defendants' claim that the odor must be of raw marijuana, instead of burned marijuana, to provide probable cause, is without merit. See New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (the smell of burned marijuana emanating from the vehicle, along with plain view of an envelope marked "Supergold," gave the officer probable cause); State v. Risin, 807 So.2d at 1043 (the odor of burning marijuana emanating from a stolen vehicle provided probable cause to search the vehicle); State v. Traylor, 723 So.2d at 498-499 (the smell of marijuana smoke emanating from the vehicle provided probable cause to believe the defendant possessed marijuana); State v. Gordon, 646 So.2d at 1010 (the odor of burned marijuana on the defendant and co-occupant of the vehicle in combination with plain view of contraband provided probable cause for search).
Chief Smith had probable cause to believe there was marijuana inside the residence and that there were people inside the home with the ability to hide or destroy the suspected contraband. These were exigent circumstances justifying Chief Smith's warrantless search of the residence. Exigent circumstances coupled with probable cause is also a well-established exception to the warrant requirement. State v. Ledford, 40,318 (La.App. 2d Cir.10/28/05), 914 So.2d 1168, 1172-1173, citing Kirk v. Louisiana, 536 U.S. 635, 637, 122 S.Ct. 2458, 2459, 153 L.Ed.2d 599 (2002). The exigent circumstance of evidence being lost or destroyed is specifically problematic in narcotics investigations:
The need to preserve evidence that may be lost or destroyed if a search is delayed, has long been recognized as an exigent circumstance. U.S. v. Hultgren, 713 F.2d 79 (5th Cir.1983). This need may be particularly compelling where narcotics are involved, for "narcotics can be easily and quickly destroyed while a search is progressing." United States v. Johnson, 802 F.2d 1459, 1462 (D.C.Cir. 1986). In United States v. Socey, 846 F.2d 1439 (D.C.Cir.1988), the Court noted that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic. Before such an exigency is present, according to United States v. Napue, 834 F.2d 1311 (7th Cir.1987), the police must have a reasonable basis for believing that there was someone in the house who will likely destroy the evidence.
State v. Wimberly, 588 So.2d 1343, 1347 (La.App. 2d Cir.1991), writ denied, 592 So.2d 1333 (La.1992). Therefore, an additional reason the motion to suppress should have been denied is because the search was a constitutional one conducted with probable cause coupled with exigent circumstances, which is a well-established exception to the warrant requirement. Once the contraband was discovered, any further search of the residence would also be justified as a search incident to a lawful arrest.
STEWART, J., dissents with written reasons.
*140 STEWART, J., dissenting.
The trial court granted the motion to suppress upon finding conflict in the testimony of Chief Smith and Deputy Brazzel as to whether the defendant gave consent to Chief Smith to enter her house. In light of the contradictory testimony and the lack of any other corroboration, the trial court did not find Chief Smith credible. This court found no error on the part of the trial court, yet the majority still reversed upon finding probable cause for the search incident to a lawful arrest along with exigent circumstances. The majority's findings are based upon the testimony of Chief Smith, a witness whose testimony lacks credibility. If no error was found in the trial court's conclusion that the defendant did not consent to the search, as claimed by Chief Smith, then I fail to see how can this court can consider the testimony of Smith otherwise credible so as to justify his intrusion into the defendant's home after he had accomplished the arrest of Kevin Waller for whom a warrant had been issued. For these reasons, I respectfully dissent.