PITMAN, J.
| ¶ Defendant Gary Howard was found guilty as charged of possession of marijuana with intent to distribute and not guilty of illegal possession of a weapon while in possession of a controlled dangerous substance. He pled guilty as a second felony habitual offender and was sentenced, pursuant to a plea agreement, to serve 18 years at hard labor, without benefit of probation or suspension of sentence. He appeals and challenges the denial of a motion to suppress the physical evidence seized at the time of his arrest and the sufficiency of the evidence against him. For the reasons stated herein, we affirm Defendant’s conviction and sentence.

FACTS

On September 28, 2013, Officers Rodney Medlin and Susan Anderson of the Shreveport Police Department went to the home of Melissa Stewart at 5218 Fairfax, Shreveport, Louisiana, to execute an arrest warrant for Defendant (Ms. Stewart’s boyfriend) for violation of his parole and probation. Upon their arrival, Ms. Stewart confirmed that it was her home. They asked if Defendant was there and informed her they had a warrant for his arrest. Ms. Stewart said Defendant was in the back bedroom and stood aside, allowing the officers to enter.
The officers found Defendant in the bedroom, lying in bed naked. Ofc. Anderson picked up a pair of boxer shorts from the floor to give to Defendant so he could dress. When the shorts landed on the bed, she noticed a bag containing four small bags of marijuana, weighing approximately 11 grams, tied to the waistband.
| j>Ms. Stewart told the officers that there were no firearms in the house and gave them consent to search; A few feet from the bed was a small closet with the door open. The officers found an unzipped *782 purse and a box on the closet shelf. The purse contained a fully loaded .38 caliber Rossi revolver, which Ms. Stewart told the officers belonged to her son. The box contained a smaller box of 50 rounds of ammunition and another bag of marijuana, weighing 7 grams. They also found a box of empty sandwich bags on a television table, some empty lxl inch bags known as jeweler’s bags and an empty prescription bottle. After being advised of his rights, Defendant admitted to police that all of the marijuana found belonged to him for his personal use, but he told them the gun did not belong to him.
Defendant was charged with possession of marijuana with intent to distribute, in violation of La. R.S. 40:966(A)(1), and with illegal possession of a weapon while in possession of a controlled dangerous substance, in violation of La. R.S. 14:95(E).
Defendant filed a motion to suppress the evidence of the marijuana, baggies and handgun seized during his arrest, asserting that the items were seized in violation of his constitutional rights because the police did not have a search warrant to search a third party’s home for him and did not have the homeowner’s consent to enter the premises.
At the hearing on the motion to suppress, the officers testified to the facts mentioned above, stating that the types of bags found were known to be used for packaging drugs for sale. Ofc. Medlin testified that the four individual bags of marijuana were packaged in a manner consistent with [.-¡distribution. The trial court concluded that the officers were lawfully in the house because they had a valid warrant for Defendant’s arrest and the homeowner confirmed he was there. The trial court also found that, once the marijuana was observed tied to Defendant’s boxer shorts, there was probable cause to search. Ms. Stewart testified that only her son was living with her on the date of Defendant’s arrest and that, at times, Defendant would stay with her. She confirmed that she gave the officers consent to enter the house to look for Defendant because they had a warrant for him.
A jury trial began on June 11, 2014, and Ofcs. Anderson and Medlin confirmed that they had a warrant for Defendant’s arrest and that Ms. Stewart had told them Defendant was there before she allowed them to enter and search for him. Ofc. Anderson testified that she was the person who picked up the boxer shorts with the bags of marijuana tied to them. She stated that multiple boxes of baggies and baggies of various sizes were found in the room. She testified that they did not find any scales or cash near Defendant. She stated that she found the gun in the purse that was located in the closet. Ofc. Medlin testified that the individual bags of marijuana tied to the boxer shorts and the large bag of marijuana found in the closet indicated to him that Defendant was distributing marijuana.
Lt. Carl Townley of the Caddo Parish Sheriffs Office testified as an expert in narcotics investigations, sales, packaging and use and regarding the charges of possession with intent to distribute versus simple possession. He stated that the 18 grams of marijuana found could be made into either 18 marijuana cigarettes of 1 gram each or 36 cigarettes of one half gram Reach. He further stated that the average marijuana user smoked approximately 3 grams of marijuana per day, depending upon its grade. Based on the amount of marijuana found, how it was packaged, the different sized baggies found on the premises and the fact that no device for smoking the marijuana was found, such as a pipe or rolling papers, Lt. Townley concluded that Defendant was *783 possessing the marijuana for resale and not for personal use.
The parties stipulated to the crime lab report that confirmed the substance found as marijuana, and the report was admitted into evidence.
The defense called Ms. Stewart to testify, who stated that her son lived with her and that, in February 2013, he purchased the gun for protection. She testified that she kept the gun in a purse located in her master bedroom closet, where the police found it. She further stated that she and Defendant had an on-and-off relationship, that she believed he had a relationship with someone else and that they had just gotten back together a couple of days prior to his arrest. She testified that she knew Defendant smoked marijuana, on average about every other day, but could not say how much he typically smoked in a day. She stated that Defendant was not employed and she did not know of him having a job or getting any type of governmental assistance in 2013. She also stated that she has known Defendant for over ten years and that he had a job about four or five years ago.
| rJDefendant’s mother, Bobbi Howard, testified that her son lived with her in Keithville and that he occasionally worked remodeling houses. She also testified that he would give her money to help out with expenses.
A unanimous jury found Defendant guilty as charged of possession of marijuana with intent to distribute, but found him not guilty of illegal possession of a weapon while in possession of a controlled dangerous substance. Defendant filed a motion for post-verdict judgment of acquittal, claiming there was no evidence of prior distribution of marijuana or other drugs, the drugs found were not packaged for distribution, the amount of marijuana found was not a large enough amount to suggest distribution, the only distribution paraphernalia found were baggies and no scales were found. He also argued that he did not live in the house where he was arrested and did not have any cash on him at the time of his arrest. Defendant also filed a motion for a new trial.
The state charged Defendant as a fourth felony habitual offender based on three prior felony convictions. On July 14, 2014, the parties appeared for arraignment on the habitual offender bill. Defendant waived any and all delays, and the trial court denied his motion for post-verdict judgment of acquittal. Defendant pled not guilty to the habitual offender charge. On July 17, 2014, the motion for new trial was denied, and the state announced that a plea agreement had been made regarding the habitual offender charge. In exchange for pleading guilty as a second felony habitual offender, Defendant would receive the agreed-upon sentence of 18 years at hard labor. The predicate offense was a 2008 conviction in the | (¡First Judicial District, Caddo Parish, for possession of a firearm by a convicted felon, for which he received a 10-year sentence. The trial court advised Defendant of his rights, accepted his guilty plea and proceeded to sentence him to 18 years’ imprisonment at hard labor without probation or suspension of sentence, with credit for time served. Defendant moved to appeal his conviction.

DISCUSSION

Sufficiency of the evidence

In his first assignment of error, Defendant claims there was insufficient evidence to support the conviction for possession with intent to distribute marijuana. He also argues that the trial court erred in denying the motion for post-verdict judgment of acquittal.
*784 Defendant argues that he did not live at the home where he was arrested and that the baggies found on the television stand and in the closet, along with the smaller bags and the empty medicine bottle, must have, therefore, belonged to Ms. Stewart. He claims that there was no evidence that he brought those baggies into the home. He contends that the police did not find any paraphernalia to smoke the marijuana because they limited their search to the bedroom. As to the marijuana found individually packaged and tied to his boxer shorts, Defendant argues that he could have purchased it in that form for his personal use.
The state argues that the evidence was sufficient to support Defendant’s conviction because he was found in possession of 11 grams of marijuana packaged in a manner consistent with drug sales tied to his boxer |7shorts and an additional 7 grams in a closet a few feet away, and he admitted all the marijuana belonged to him. In addition, extra baggies of multiple varieties known to be used in drugs sales were found. The state’s expert testified that, although it was possible the drugs were for personal use, the amount of marijuana found, together with the packaging and the baggies, was more consistent with drug sales than personal use. Last, the expert testified that the absence of cash at the scene was not significant since dealers routinely keep their money separate to avoid seizure by the police.
When issues are raised on appeal, both as to the sufficiency of evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Baker, 49,175 (La.App. 2d Cir. 8/27/14), 148 So.3d 217.
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App. 2d Cir. 1/14/09), 1 So.3d 833, writ denied, 09-0310 (La.11/6/09), 21 So.3d | R297. On appeal, a reviewing court must view the evidence in the light most favorable to the state and must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. Jackson, supra.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App. 2d Cir. 2/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913, cert. denied, 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. Direct evidence provides proof of the existence of a fact, for example, a witness’s testimony that he saw or heard something. State v. Lilly, 468 So.2d 1154 (La.1985). Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of *785 the main fact may be inferred according to reason and common experience. Id. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. State v. Sutton, 436 So.2d 471 (La.1983). When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by the evidence must be sufficient for a rational trier of fact to Inconclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, supra; State v. Speed, 43,786 (La.App. 2d Cir. 1/14/09), 2 So.3d 582, writ denied, 09-0372 (La.11/6/09), 21 So.3d 299. This is not a separate test that applies instead of a sufficiency of the evidence test when circumstantial evidence forms the basis of the conviction. Id. Rather, all of the evidence, both direct and circumstantial, must be sufficient under Jackson to convince a rational juror that the defendant is guilty beyond a reasonable doubt. Id.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra; State v. Allen, 36,180 (La.App. 2d Cir. 9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, and 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
The fact finder is charged with making a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Eason, supra; State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
La. R.S. 40:966 provides that it shall be unlawful for any person to knowingly or intentionally distribute or dispense or possess with intent to |indistribute, a controlled dangerous substance or controlled substance analogue classified in Schedule I, such as marijuana.
To convict a defendant of possession of a controlled dangerous substance with intent to distribute, the state must prove beyond a reasonable doubt that he knowingly or intentionally possessed the contraband and that he did so with the intent to distribute it. State v. Williams, 47,574 (La.App. 2d Cir. 11/14/12), 107 So.3d 763, writ denied, 13-0079 (La.6/14/13), 118 So.3d 1080.
While it is possible to prove possession with intent to distribute even with small quantities, intent to distribute a controlled dangerous substance is a specific intent crime. State v. Cummings, 46,038 (La.App. 2d Cir. 1/26/11), 57 So.3d 499, writ denied, 11-0341 (La.6/17/11), 63 So.3d 1037; State v. Credeur, 11-234 (La.App. 3d Cir. 11/23/11), 81 So.3d 741. Specific intent is a state of mind that may be inferred from the circumstances, of the offense or the defendant’s act or failure to act, that indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Thornton, 47,598 (La.App. 2d Cir. 3/13/13), 111 So.3d 1130.
Intent to distribute illegal drugs may be established by proving circumstances surrounding the defendant’s possession which give rise to reasonable inferences of intent to distribute. State v. Holden, 45,038 (La.App. 2d Cir. 1/27/10), *786 30 So.3d 1053, writ denied, 10-0491 (La.9/24/10), 45 So.3d 1072.
^Jj^The state need not prove the defendant actually possessed the drugs, as evidence of constructive possession is sufficient. State v. Holden, supra. Constructive possession is established by evidence that the drugs were within the defendant’s dominion and control and that the defendant had knowledge of its presence. Id. Guilty knowledge is an essential element of possession and can be inferred from the circumstances. State v. Toups, 01-1875 (La.10/15/02), 833 So.2d 910; State v. Anderson, 36,969 (La.App. 2d Cir. 4/9/03), 842 So.2d 1222.
Whether a defendant exercised dominion and control is based on factors such as the defendant’s knowledge that drugs were in the area; the defendant’s relationship with other persons found in actual possession; the defendant’s access to the area where the drugs were found; evidence of drug paraphernalia or of recent drug use; and the defendant’s physical proximity to the drugs. State v. Toups, supra-, State v. Anderson, supra.
Five factors are used to determine whether circumstantial evidence is sufficient to prove intent to distribute a controlled dangerous substance:
(1) did the defendant distribute or attempt to distribute the drug;
(2) was the drug in a form usually associated with distribution;
(3) does the amount of drug create an inference of intent to distribute;
(4) did testimony establish that the amount of drugs found in the defendant’s possession was inconsistent with personal use; and
(5) was there any other evidence of intent to distribute, such as scales or packaging materials.
State v. Cummings, supra. Other relevant factors considered are street value and drug dosage. State v. Stephens, 47,-978 (La.App. 2d Cir. 5/29/13), 114 So.3d 1265, writ denied, 13-1551 (La.1/17/14), 130 So.3d 342. Testimony of street value and dosage of a drug is relevant to the issue of intent to distribute. State v. Watson, 47,980 (La.App. 2d Cir. 5/15/13), 135 So.3d 693, writs denied, 13-1676 (La.2/7/14), 131 So.3d 856 and 862. Mere possession of contraband does not amount to evidence of intent to distribute “unless the quantity is so large that no other inference is possible.” State v. Holden, supra.
In comparing the facts of this case with the five factors used to determine intent to distribute, we note that there was no evidence that Defendant had attempted or completed a drug sale; however, the marijuana was found packaged in a form consistent with drug sales. The amount of drugs found was not large enough to create an inference of intent to distribute; however, there was sufficient evidence of paraphernalia consistent with intent to distribute based on the extra box of baggies on the television stand, the additional baggies in the closet and the small lxl inch bags, even though no scales or cash on Defendant were found. Further, the police found no paraphernalia, such as a pipe or rolling papers, consistent with Defendant’s personal use of the marijuana, and the testimony at trial by Ms. Stewart suggested that Defendant was not a heavy user of marijuana.
Considering all of the evidence in a light most favorable to the prosecution, the evidence is sufficient that a rational trier of fact could have |iafound the required elements proven beyond a reasonable doubt. For the foregoing reasons, this assignment of error is without merit.

*787
Denial of the motion to suppress

In his second assignment of error, Defendant argues that the trial court erred in denying the motion to suppress the physical evidence seized at the time of his arrest because the arrest warrant alone did not entitle the police to enter Ms. Stewart’s home. He further argues that Ms. Stewart’s acknowledgment to the officers that he was there, and stepping back, which allowed the officers to enter and search for him, did not constitute consent for the officers to enter the house. He contends that the consent was not voluntary because Ms. Stewart was intimidated by the uniformed officers who arrived at her door. He claims that the officers needed a search warrant to enter the house and the bedroom and to search the closet. Because there was no such search warrant, he argues that the evidence seized should have been suppressed.
The state argues that the arrest warrant gave the officers limited authority to enter the premises because they had reason to believe Defendant was at Ms. Stewart’s house. Ms. Stewart confirmed that Defendant was there, so a search warrant was unnecessary. The state also argues that, since Defendant had been arrested and taken into custody, even if.the marijuana tied to his shorts had not been observed in plain view, the drugs would have been found incident to his arrest and the items in the closet would still have been found in the subsequent sweep of the room.
114The right of every person to be secure in his person, house, papers and effects, against unreasonable searches and seizures, is guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 5, of the 1974 Louisiana Constitution. It is well settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330; State v. Tatum, 466 So.2d 29 (La.1985); State v. Ledford, 40,318 (La.App. 2d Cir. 10/28/05), 914 So.2d 1168. To claim the protection of the Fourth Amendment, the claimant must have a legitimate expectation of privacy in the place of intrusion and the expectation must be one that society is prepared to recognize as reasonable. Minnesota v. Olson, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). An overnight guest has an expectation of privacy in the home that society is prepared to recognize as reasonable. Id.
La. C. Cr. P. art. 703 states that a defendant may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the state bears the burden of proving that the search and seizure were justified pursuant to one of the exceptions to the warrant requirement. La. C. Cr. P. art. 703(D); State v. Johnson, 32,384 (La.App. 2d Cir. 9/22/99), 748 So.2d 31.
bJn reviewing the correctness of the trial court’s pretrial ruling on a motion to suppress, the appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress and may review the entire record, including testimony at trial. State v. Monroe, 49,365 (La.App. 2d Cir. 11/19/14), 152 So.3d 1011.
Great weight is placed upon the trial court’s ruling on a motion to suppress in regard to the finding of facts because it had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Crews, 28,153 (La.App. 2d Cir. 05/08/96), 674 So.2d 1082. *788 Accordingly, this court reviews the district court’s ruling on a motion to suppress under the manifest error standard for factual determinations, while applying a de novo review to its findings of law. State v. Hemphill, 41,526 (La.App. 2d Cir. 11/17/06), 942 So.2d 1263, writ denied, 06-2976 (La.3/9/07), 949 So.2d 441.

Exceptions to the search warrant rule

When a warrantless search is conducted, the state has the burden of showing the search was justified as an exception to the warrant requirement of the Fourth Amendment. Two such exceptions are consent and the “plain view doctrine.”
It is well settled that a war-rantless search conducted pursuant to a valid consent is permitted by the Louisiana and United States Constitutions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Raheem, 464 So.2d 293 (La.1985); State v. Crews, supra. Both oral or written consent to search is valid. Id. Under some | ^circumstances, even a gesture may be sufficient to convey valid consent to search, such as when the person having authority moves aside to allow entry and then indicates the person sought is inside. State v. Howard, 37,580 (La.App. 2d Cir. 9/24/03), 855 So.2d 881.
To be valid, consent must be (1) free and voluntary, in circumstances that indicate the consent was not the product of coercion, threat, promise, pressure or duress that would negate the voluntariness; and (2) given by someone with apparent authority to grant consent, such that the police officer reasonably believes the person has the authority to grant consent to search. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); State v. Shumaker, 40,275 (La.App. 2d Cir. 10/28/05), 914 So.2d 1156; State v. Owens, 480 So.2d 826 (La.App. 2d Cir.1985), writ denied, 486 So.2d 748 (La.1986), cert. denied,. 479 U.S. 840, 107 S.Ct. 145, 93 L.Ed.2d 87 (1986).
In State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999), the Louisiana Supreme Court upheld the trial court’s ruling denying the defendant’s motion to suppress on grounds that the defendant, who was sharing a bedroom with his girlfriend in her mother’s home, did not have a reasonable expectation of privacy because he did not have exclusive control over the area he was using. The court concluded that the police officers reasonably believed that the consent to search granted by the mother, who owned the home, and the daughter/girlfriend, who shared the bedroom, was |17valid because the women had authority to consent to the search of the bedroom. Id.
An arrest warrant, founded on probable cause, gives law enforcement officers “the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.” State v. Wallace, 41,837 (La.App. 2d Cir. 1/31/07), 950 So.2d 135. While a search warrant is generally required to effect the arrest of a person inside the home of a third party, the need for a search warrant is satisfied when the homeowner grants consent or exigent circumstances exist. State v. Jason, 10-0658 (La.App. 4th Cir. 12/1/10), 53 So.3d 508. See Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).
The plain view doctrine renders a warrantless search reasonable: (1) if the police officer is lawfully in the place from which he views the object; (2) where the object’s incriminating character is immedi *789 ately apparent; and (3) the officer has a lawful right of access to the object. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); State v. Hemphill, supra.
At the hearing on the motion to suppress, the officers testified that they had an arrest warrant for Defendant, they had information he was at that location, the homeowner confirmed Defendant was in the house and the homeowner stepped aside to allow the officers to enter and search for him in the bedroom, all of which was corroborated by the homeowner.
There was no complaint by the homeowner and no facts in the record to suggest that Ms. Stewart’s consent to enter the home was the product of |1scoercion, threat, promise, pressure or duress. Her gesture in advising that Defendant was in the bedroom and in stepping aside to allow entry can be construed as consent. Therefore, the facts support the conclusion that consent was freely and voluntarily given.
Further, Ms. Stewart acknowledged she was the homeowner and that Defendant did not live there; therefore, he was an overnight guest with a limited reasonable expectation of privacy regarding the bedroom he used. While Defendant might have had some reasonable expectation of privacy as to his personal luggage or bags, he did not have his own room with a lock and did not have exclusive access, control or use of Ms. Stewart’s bedroom. Therefore, he had no reasonable expectation of privacy in that bedroom, the closet or the furniture inside her bedroom, since he shared them as her guest. Accordingly, he assumed the risk that Ms. Stewart could grant consent to search since she had common authority over the room, closet and furniture. For these reasons, the officers reasonably believed Ms. Stewart had the authority to give consent for them to enter her home to execute the arrest warrant.
When the officers entered the home, pursuant to the arrest warrant, they observed, in plain view, the marijuana tied to Defendant’s shorts and the baggies on the television stand. Thereafter, Ms. Stewart gave them permission to search her bedroom, in which Defendant had no expectation of privacy since he was merely a guest. As a result, the officers had valid consent to search the room when they discovered the handgun, the other bag of marijuana, the additional baggies and the jeweler’s bags. These items [13were all seized pursuant to a lawful search. Therefore, this assignment of error is without merit.

Pro Se assignments of error

Defendant was granted an extended deadline for filing a pro se brief; however, it was not timely filed. He asserted four errors in his brief: (1) the evidence was insufficient to support a conviction for possession with intent to distribute; (2) the police did not have a reasonable belief that Defendant was in Ms. Stewart’s home; (3) the trial court erred in denying him the right to present evidence relevant to his defense; and (4) the prosecutor committed prosecutorial misconduct by knowingly allowing the state’s witnesses to testify falsely.
- The sufficiency of the evidence and the reasonableness of the officers’ belief that Defendant was in Ms. Stewart’s home have been addressed above. Defendant claims the trial court denied him the right to present evidence relevant to his defense when it refused him the right to impeach Ofc. Medlin’s testimony by playing the video from his vehicle regarding Defendant’s incriminating statements about marijuana. We find that there was no showing of prejudice here and that the result would not have otherwise been dif *790 ferent, since Defendant was in actual possession of the marijuana bags that were tied to his boxer shorts.
Defendant also argues that the officers gave false testimony that he knew about the gun and that he was a drug dealer; however, because Defendant was not convicted of the gun-related offense, the officers’ testimony did not cause him prejudice. Their testimony that he was a drug | gndealer was based on the evidence, and the jury and trial judge found their testimony to be credible.
Defendant’s final complaint, that the prosecution referred to him as a womanizer during closing arguments, cannot be addressed because the closing arguments were not included in the transcript lodged on appeal, and there was no objection to their absence in the record. For the foregoing reasons, Defendant’s pro se assignments of error are without merit.

CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant Gary D. Howard are hereby affirmed.
AFFIRMED.