Judgment rendered August 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,803-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

GREGORY EARL JONES                          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 374,237

Honorable Donald Edgar Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Douglas Lee Harville

GREGORY EARL JONES                     Pro Se

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

JASON W. WALTMAN
COURTNEY N. RAY
KENDRA JOSEPH
REBECCA A. EDWARDS
Assistant District Attorneys

* * * * *

Before PITMAN, ROBINSON, and HUNTER, JJ.

**HUNTER, J.**

Defendant, Gregory Earl Jones, was charged by bill of indictment with second degree murder, in violation of La. R.S. 14:30.1. Following a trial, a unanimous jury found him guilty as charged, and he was sentenced to serve life in prison without the benefit or probation, parole, or suspension of sentence. For the following reasons, we affirm.

## FACTS

Defendant, Gregory Earl Jones, and the victim, Tasha Mayberry ("Tasha"), were involved in a romantic relationship and lived together "off and on." Defendant did not own a vehicle, but Tasha often allowed him to drive her vehicle, a Dodge Charger. On the evening of February 16, 2020, Tasha refused to allow defendant to use her car, and a verbal disagreement ensued in front of their residence. During the argument, defendant pulled out a nine-millimeter handgun and shot Tasha two times; she died a result of the shooting.[1]

The shooting was witnessed by Tasha's neighbors, Jacqueline Williams, Preston Coleman, and Valeria Robinson, and Shreveport police officer Brandon Hancock. Tasha's neighbors reported overhearing Tasha and defendant arguing. Robinson testified she saw defendant grab Tasha and push her against the car as the two "tussled" over Tasha's car keys.

---

[1] Dr. Long Jin, a forensic pathologist at LSU Health Sciences Center, was accepted by the trial court as an expert in the field of forensic pathology. Dr. Jin testified Tasha sustained two gunshot wounds, one to her right upper arm, and one to her left upper leg. The fatal wound was the result of a bullet entering her right upper arm, proceeding into the right side of her chest, and perforating her left lung, heart, aorta, and right lung. Dr. Jin testified the projectile "completely destroyed" the function of Tasha's heart and lungs and ultimately lodged in the subcutaneous tissue of her back. The bullet was recovered during the autopsy.

Coleman, Robinson, and Officer Hancock saw defendant, who was wearing a red hooded jacket and black pants, shoot Tasha and run behind a house.[2]

Multiple police officers responded to the scene. They observed Tasha's car was in the driveway with the rear driver's side window shattered, and glass from the shattered window was inside the car and on the ground nearby. The officers also noticed the door to the house was open, so they entered the residence to clear it. Officer Hancock and other police officers questioned witnesses at the scene and learned the suspect's name was "Gregory Jones." As the officers walked through the residence, they noticed documents, including a birth certificate and a paycheck stub bearing defendant's name. Three expended nine-millimeter cartridge casings and a hat bearing defendant's DNA were recovered from the scene of the shooting.

The following day, the police department learned defendant had been seen at an apartment complex in Shreveport. Defendant was apprehended in a vacant apartment, and he was in possession of a nine-millimeter handgun.[3] Officers also removed a Dodge key fob from defendant's pocket.[4] Subsequent testing revealed the three expended casings located at

---

[2] Although Robinson and Coleman witnessed defendant shoot Tasha, the testimony varied as to where they believed Tasha was shot. Robinson believed defendant shot Tasha in the chest, while Coleman testified defendant "blew her brains out."

[3] Defendant disregarded the police officers' command to drop his weapon. When defendant raised a firearm, one of the officers discharged his weapon, striking defendant in the chest. He was placed under arrest and transported to the hospital for medical attention. The video from one of the officer's body camera was played for the jury during the trial.

[4] Detective Ronald Debello, an investigator with the violent crimes/homicide unit, testified he did not test the key fob to determine whether it was compatible with Tasha's car.

the scene of the shooting were fired from the firearm found in the apartment with defendant.[5]

Defendant was arrested and charged by bill of indictment with second degree murder, in violation of La. R.S. 14:30.1. The State contended defendant either had specific intent to kill or inflict great bodily harm, or he killed Tasha during the commission of an attempted robbery (of the car while armed with a firearm). Following a trial, a unanimous jury found defendant guilty as charged, and he was sentenced to serve life in prison without the benefit of probation, parole, or suspension of sentence. The trial court denied defendant's motions for a new trial and post-verdict judgment of acquittal.

Defendant appeals.

## DISCUSSION

Defendant contends the evidence was insufficient to support his conviction of second degree murder. He argues the State failed to prove he had specific intent to kill Tasha, or he killed her during an attempt to rob her of her car. Defendant concedes he "fired shots" during the "heated domestic incident." Nonetheless, he asserts the State failed to prove "how or why" he discharged his weapon. He describes firing the weapon was "negligent, reckless, and careless" and argues there was no evidence of "what led to the fatal shots" or where he was aiming or intending to shoot at that time. Thus, according to defendant, this Court should reverse his conviction, vacate his sentence, and enter a judgment of acquittal.

---

[5] The bullet recovered during Tasha's autopsy had similar characteristics. However, the markings were not sufficient to make a positive identification.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Alexander*, 51,918 (La. App. 2 Cir. 4/11/18), 247 So. 3d 981, *writ denied*, 18-0805 (La. 2/11/19), 263 So. 3d 436. The appellate court does not assess the credibility of witnesses or reweigh evidence. *Id.*; *State v. Bass*, 51,411 (La. App. 2 Cir. 6/21/17), 223 So. 3d 1242. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Haley*, 51,256 (La. App. 2 Cir. 5/24/17), 222 So. 3d 153, *writ denied*, 17-1230 (La. 4/27/18), 241 So. 3d 305.

Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he or she saw or heard something. *State v. Alexander*, *supra*; *State v. Howard*, 49,965 (La. App. 2 Cir. 6/24/15), 169 So. 3d 777, *aff'd*, 15-1404 (La. 5/3/17), 226 So. 3d 419. Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. *Id.* When the state relies on circumstantial evidence to establish the existence of an essential element of a crime, the court must assume every fact that the evidence tends to prove, and the circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *State v. Robinson*, 47,437 (La. App. 2 Cir. 11/14/12), 106 So. 3d 1028, *writ denied*, 12-2658 (La. 5/17/13), 117 So. 3d 918.

Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Alexander, supra*. The trier of fact is charged with making a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness in whole or in part. The reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. *Id.*; *State v. Woodard*, 47,286 (La. App. 2 Cir. 10/3/12), 107 So. 3d 70, *writ denied*, 12-2371 (La. 4/26/13), 112 So. 3d 837.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Second degree murder also occurs when the offender kills someone while engaged in the perpetration or attempted perpetration of certain felony offenses, including armed robbery, first degree robbery, or second degree robbery, even though he has no intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(2).[6]

Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed

---

[6] Armed robbery is the taking of anything or value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64(A). First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon. La. R.S. 14:64.1(A). Second degree robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another when the offender intentionally inflicts serious bodily injury. La. R.S. 14:64.4(A).

criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances and the actions of the defendant. *State v. Wayne*, 55,052 (La. App. 2 Cir. 6/28/23), 367 So. 3d 924, *writ not cons.*, 23-01166 (La. 2/27/24), 379 So. 3d 666; *State v. Walker*, 51,217 (La. App. 2 Cir. 5/17/17), 221 So. 3d 951, *writ denied*, 17-1101 (La. 6/1/18), 243 So. 3d 1064. Specific intent can be formed in an instant. *State v. Wayne*, *supra*; *State v. Alexander, supra*; *State v. Washington*, 50,424 (La. App. 2 Cir. 3/16/16), 188 So. 3d 350, *writ denied*, 16-0718 (La. 4/13/17), 218 So. 3d 119.

The discharge of a firearm at close range and aimed at a person is indicative of specific intent to kill or inflict great bodily harm upon that person. *State v. Wayne*, *supra*; *State v. Lloyd*, 48,914 (La. App. 2 Cir. 1/14/15), 161 So. 3d 879, *writ denied*, 15-0307 (La. 11/30/15), 184 So. 3d 33, *cert. denied*, 580 U.S. 897, 137 S. Ct. 227, 196 L. Ed. 2d 175 (2016). Specific intent to kill may also be inferred from the extent and severity of the victim's injuries and the defendant's use of a deadly weapon to produce those injuries, which involved serious risk of death. *State v. Wayne*, *supra*; *State v. Alexander*, *supra*. The determination of whether the requisite intent to kill is present is a question for the trier of fact. *State v. Wayne*, *supra*; *State v. Walker*, *supra*.

In the instant case, at the time of the shooting, Tasha was on the telephone with her sister, Shameka Mayberry ("Shameka"). Tasha told Shameka about an argument she had with defendant regarding the use of her car. When Tasha pulled into the driveway of her home, she told Shameka defendant was standing on the porch facing her as she approached.

According to Shameka, she heard a gunshot, and Tasha stated, "Girl, he just shot the window out of my car." Shameka stated the phone went silent, and she did not hear anything else. Shameka later received a telephone call from her mother, who informed her defendant had shot Tasha. Shameka also stated she lived around the corner from Tasha's house, and she arrived at the scene before the paramedics. She testified she observed Tasha lying on the ground, "facedown." Shameka identified defendant from a photographic lineup.

Jacqueline Williams, Tasha's next-door neighbor, testified she was on her porch on the night of the shooting, and she overheard Tasha and a man arguing about Tasha's black Dodge Charger. According to Williams, the man wanted to borrow the car, but Tasha responded, "No, you can't get my car." Williams stated she went inside her house, and her boyfriend, Preston Coleman, went to the back of the house to check on their dog. Williams also testified she heard gunshots, and Coleman ran inside and told her the man had shot Tasha. Williams stated the man, who was wearing a red hooded jacket, ran through the back yard. She identified defendant in a photographic lineup as the man she had often seen at Tasha's house and the man she saw running away after the shooting.[7]

Coleman, who lived with Williams, testified he overheard Tasha and her boyfriend "arguing about car keys." He stated he heard Tasha tell her boyfriend, "You're not getting my car keys[.] I'll take you where you got to go." Coleman testified the man "just looked at [Tasha] and open[ed] fire on

___

[7] Williams testified she had never met defendant, but she had seen him at Tasha's house and down the street at Tasha's mother's house. She was unable to positively identify defendant at trial "because his hair is different" because he "wore little dreads" prior to the trial.

her." He recalled hearing "five or six" gunshots and seeing Tasha fall to the ground. Coleman stated the man, who was wearing a red top and black pants, "jumped the gate" and ran behind the house. Coleman identified defendant as the man he saw shoot Tasha.

Valeria Robinson, one of Tasha's neighbors, testified she was sitting on her porch when she heard an argument. She stated she saw Tasha and defendant "tussling" over some keys, and she saw Jones trying to enter the driver's seat of the car. Robinson testified she overheard Tasha state, "Greg, give me my keys …[.] You're not going nowhere in my car." She stated by this time, defendant was in the driver's seat of the car, and Tasha was "standing in the driver's door trying to reach in to get her keys." She also stated defendant and Tasha began "tussling outside the car," and defendant "pinned her against" the open door. Robinson testified Tasha was resisting and began to scream for help when she saw a police vehicle coming down the street. Robinson stated she did not see the gun, but she saw "the sparks from the gun shooting upward" when defendant shot Tasha. Robinson testified she believed she heard three gunshots.[8] She testified after the shooting, Tasha fell to the ground, and defendant "took off running around the house." Robinson admitted she did not know either Tasha or defendant prior to the shooting, but she stated she had seen them together and she identified defendant in open court as the person she saw shoot Tasha.[9]

---

[8] Robinson testified she called 9-1-1 to report the altercation and was on the phone with an operator when she heard the gunshots.

[9] On the night of the shooting, Robinson told Officer Hancock she saw defendant fire two shots in the air before shooting Tasha, and she heard Tasha say, "Oh, you're going to shoot up my car?" However, during her testimony at trial, she denied making that statement.

Officer Brandon Hancock testified he was patrolling the area near Tasha's house when he was dispatched to a "shots fired" call on West 73rd Street in Shreveport. He testified when he arrived near the scene, he rolled down his window and heard a woman screaming, "Help." Officer Hancock stated he observed a man dressed in red and black shoot a woman two times and run behind a house.

Defendant concedes he shot Tasha during an argument over the use of her car. Defendant also admits he and Tasha were arguing because Tasha had refused to allow him to use her vehicle. Nevertheless, he argues the State failed to prove he had the requisite specific intent to kill or inflict great bodily harm. Defendant's specific intent can be inferred from defendant's actions: he pointed a nine-millimeter firearm at Tasha and shot her twice from a close range. The evidence, as well as defendant's admission, excludes every reasonable hypothesis of his innocence. Further, the testimony from Officer Hancock and Tasha's neighbors and sister established defendant was angry because Tasha would not allow him to use her car. Defendant drew his gun and fired it at Tasha twice, striking her both times.

Further, defendant's argument that his conduct was merely "negligent, reckless, and careless" is without merit. There is no argument, or evidence, which tends to prove defendant committed the homicide in sudden passion, or he was provoked in a manner sufficient to deprive an average person of his self-control and cool reflection. The testimony established Tasha refused to allow defendant to drive her car, so he attempted to forcibly take her keys. When she yelled for help, he shot her. In viewing the evidence in a light

9

most favorable to the prosecution, we find any rational trier of fact could have found, beyond a reasonable doubt, the State presented sufficient evidence to prove defendant committed the offense of second degree murder.

## CONCLUSION

For the reasons set forth herein, we affirm defendant's conviction and sentence.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED.**